UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JESUS CASTRO SANCHEZ,

                       Petitioner,

v.

KRISTI NOEM et al.,

                    Respondents.

_____/

Case No. 1:25-cv-1361

Honorable Paul L. Maloney

## OPINION

Petitioner Jesus Castro Sanchez initiated this action on November 4, 2025, by filing a counseled combined petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 and complaint for emergency injunctive relief. (Pet., ECF No. 1.) Petitioner is presently detained by the United States Immigration and Customs Enforcement (ICE) at the North Lake Processing Center (North Lake) in Baldwin, Lake County, Michigan.

Petitioner challenges the lawfulness of his current detention and asks the Court for the following relief: assume jurisdiction over this matter; declare that Respondents' detention of Petitioner violates the Fifth Amendment's Due Process Clause and the Immigration and Nationality Act (INA); issue a writ of habeas corpus requiring that Respondents release Petitioner from custody or, in the alternative, provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) within five days and accept jurisdiction to issue a bond order; and award Petitioner attorney's fees and costs. (§ 2241 Pet., ECF No. 1, PageID.17–18.)[1] For the following reasons, the

_____

[1] In his petition, Petitioner sought either an initial temporary restraining order compelling his release and enjoining continued detention or compelling Respondents to conduct a bond hearing to ensure Petitioner's due process rights, or alternatively, Petitioner asked the Court to order

Court will conditionally grant Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## Discussion

### I.    Factual Background

Petitioner is a native and citizen of Mexico. (De Leon Decl. ¶ 4, ECF No. 4-1, PageID.57.) Respondents represent that Petitioner "entered the United States[] at an unknown time and place without being inspected and admitted or paroled by immigration officials." (*Id.*) Petitioner avers that he "has been present in the United States since 2004." (§ 2241 Pet., ECF No. 1, PageID.1.)

On October 30, 2025, United States Border Patrol (USBP) agents encountered Petitioner around Wheeling, Illinois. (De Leon Decl. ¶ 5, ECF No. 4-1, PageID.57.) That day, agents arrested Petitioner "without issuing a Form I-200, Warrant for Arrest of Alien, based upon the agents' reasonable suspicion that [Petitioner] was present in the United States unlawfully and would flee immigration officials before a Form I-200 could be issued." (*Id.* ¶ 6, PageID.58.)

A copy of the Form I-213, Record of Deportable/Inadmissible Alien, is attached to Agent De Leon's declaration. In that form, USBP Agent Patino-Pickert indicated that on October 30, 2025, he approached Petitioner at an intersection in Wheeling, Illinois, and "conducted a field interview." (ECF No. 4-1, PageID.65.) Agent Patino-Pickert announced himself as a USBP agent. (*Id.*) Petitioner was "using a leaf blower and was close to a gate that led to the backyard." (*Id.*,

---

Respondents to show cause, within three days, why the petition should not be granted. (Pet., ECF No. 1, PageID.2.) In an order entered on November 7, 2025, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner should not be granted. (Order, ECF No. 3.) Respondents filed their response on November 12, 2025, (ECF No. 4), and Petitioner filed his reply on November 14, 2025, (ECF No. 5). As to Petitioner's request for a temporary restraining order, because the Court will conditionally grant Petitioner's § 2241 petition, as set forth herein, the Court does not, and need not, separately address Petitioner's motion for a temporary restraining order.

PageID.64–65.) According to Agent Patino-Pickert, Petitioner "attempted to walk away towards the gate after [Agent Patino-Pickert] asked if he could shut off the leaf blower to better hear." (*Id.*, PageID.65.) Petitioner then "walked over to a work trailer to place the leaf blower down and shut it off." (*Id.*)

Petitioner refused to answer any of Agent Patino-Pickert's questions regarding Petitioner's citizenship and where he was born. (*Id.*) Petitioner "was advised that [Agent Patino-Pickert would] take a picture of him to verify his identity using facial recognition." (*Id.*) Petitioner did not answer Agent Patino-Pickert's numerous questions about Petitioner's immigration status. (*Id.*) Agent Patino-Pickert detained Petitioner "[d]ue to his nervous behavior and also with the initial encounter." (*Id.*)

Petitioner was transported to the ICE facility in Broadview, Illinois. (*Id.*) There, a check came back indicating that Petitioner was from Mexico and was present in the United States illegally. (*Id.*) When asked, Petitioner "stated he lived and worked in the area but was unwilling to provide an address for either his home or work location." (*Id.*) Petitioner also "stated he had no U.S. government-issued identification displaying his identity or home address and admitted he was present in the United States unlawfully." (*Id.*) In Agent Patino-Pickert's experience, "aliens who have fled from law enforcement and fail to provide basic details about their home or work circumstances will seek to abscond rather than face apprehension and possible deportation." (*Id.*)

ICE detained Petitioner without bond under § 235 of the INA because "he is an applicant for admission to the United States seeking admission and he is not clearly and beyond doubt entitled to admission." (De Leon Decl. ¶ 7, ECF No. 4-1, PageID.61.) ICE served Petitioner with the Form I-862, Notice to Appear (NTA), charging Petitioner with inadmissibility pursuant to § 212(a)(6)(A)(i)(I) of the INA because Petitioner is an "immigrant who is present in the United

3

States without having been admitted or paroled, or who arrived at a time or place not designated by the Attorney General." (*Id.* ¶ 8.) Petitioner was also charged with inadmissibility pursuant to § 212(a)(7)(A)(i)(I) of the INA "for being an immigrant who, at the time of application for admission, does not have a valid immigration or travel documents." (*Id.*, PageID.61–62.)

A copy of the NTA was filed with the Detroit Immigration Court to commence removal proceedings. (*Id.*, PageID.62.) Petitioner was transferred to North Lake on November 1, 2025. (*Id.* ¶ 9.) He "is currently in removal proceedings on the detained docket before the Detroit Immigration Court Docket" and is scheduled to appear for a "master hearing" on December 19, 2025. (*Id.*¶ 10.) Petitioner has not requested a bond hearing. (*Id.*)

## II.    Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

## III.    Jurisdiction

Respondents first argue that three provisions of the INA divest this Court of jurisdiction over Petitioner's habeas action: 8 U.S.C. § 1252(e)(3), 8 U.S.C. § 1252(g), and 8 U.S.C. § 1252(b)(9). (Resp., ECF No. 4, PageID.26–30.) For the following reasons, the Court concludes that § 1252(e)(3), § 1252(g), and § 1252(b)(9) do not preclude the Court's review of Petitioner's § 2241 petition.

## A.    Section 1252(e)(3)

Section 1252(e)(3), which is titled, "Challenges on validity of the system," states that:

[j]udicial review of determinations under section 1225(b) of this title and its implementation is available in an action instituted in the United States District Court for the District of Columbia, but shall be limited to determinations of—

(i) whether such section, or any regulation issued to implement such section, is constitutional; or

(ii) whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law.

8 U.S.C. § 1252(e)(3)(A)(i)–(ii).

Here, Petitioner challenges the lawfulness of his detention without a bond hearing; Petitioner is not challenging the validity of the statutory scheme itself. Indeed, Petitioner does not appear to dispute that § 1225(b)(2) requires detention of noncitizens detained under that subsection. Instead, Petitioner argues that Respondents lack statutory authority to detain him under § 1225(b)(2) because that statute does not apply to his circumstances. Petitioner's present § 2241 petition is not the type of action that is contemplated by 8 U.S.C. § 1252(e)(3). Accordingly, the Court concludes that § 1252(e)(3) does not deprive the Court of jurisdiction.

## B.    Section 1252(g)

Section 1252(g) provides:

Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).

The United States Supreme Court has held that the scope of § 1252(g) is "narrow," and "[t]hat provision [only] limits review of cases 'arising from' decisions 'to commence proceedings, adjudicate cases, or execute removal orders.'" *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1907 (2020) (quoting 8 U.S.C. § 1252(g)). In *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, the United States Supreme Court explained that "[w]e have previously rejected as 'implausible' the Government's suggestion that § 1252(g) covers 'all claims arising from deportation proceedings' or imposes 'a general jurisdictional limitation.'" *Id.* (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999)).

Here, contrary to Respondents' assertions, Petitioner's action requesting a writ of habeas corpus ordering Respondents to conduct a bond hearing does not seek review of a discretionary decision to "commence proceedings," "adjudicate" a case, or "execute" a removal order. Instead, Petitioner seeks a writ of habeas corpus challenging his continued confinement without bond. This action falls outside of the narrow scope of § 1252(g) and within the Court's jurisdiction.

### C.    Section 1252(b)(9)

Under § 1252(b)(9),

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 . . . or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9).

In *Jennings v. Rodriguez*, 583 U.S. 281 (2018), the United States Supreme Court held that § 1252(b)(9) did not bar the Supreme Court's review of "questions of law" regarding whether "certain statutory provisions require detention without a bond hearing." *Jennings*, 582 U.S. at 292.

In reaching this conclusion, the Supreme Court explained that "the applicability of § 1252(b)(9) turns on whether the legal questions that we must decide 'aris[e] from' the actions taken to remove these aliens." *Id.* at 293. The Supreme Court rejected an "expansive interpretation of § 1252(b)(9)," explaining that even if "[t]he 'questions of law and fact' . . . could be said to 'aris[e] from' actions taken to remove the aliens in the sense that the aliens' injuries would never have occurred if they had not been placed in detention," this "expansive interpretation of § 1252(b)(9) would lead to staggering results," such as, for example, improperly precluding judicial review of inhumane conditions of confinement claims under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). *Id.*

Here, Petitioner is challenging his entitlement to a bond hearing, and for the reasons set forth above, the Court concludes that § 1252(b)(9) does not divest the Court of jurisdiction to consider Petitioner's habeas petition.[2]

## IV.   Exhaustion

Respondents argue that the Court should deny Petitioner's request for habeas corpus relief because Petitioner has not requested a bond hearing before the immigration court and, therefore, has not exhausted his administrative remedies. (Resp., ECF No. 4, PageID.30.) Respondents further argue that Petitioner should request a bond hearing and, if necessary, appeal any unfavorable decision to the Board of Immigration Appeals (BIA). (*Id.*, PageID.31.)

Here, no applicable statute or rule mandates administrative exhaustion by Petitioner. Thus, whether to require exhaustion is within this Court's "sound judicial discretion." *See Shearson v. Holder*, 725 F.3d 588, 593–94 (6th Cir. 2013) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144

---

[2] Numerous other federal District Courts have also concluded that the statutory provisions cited by Respondents and discussed herein, do not divest federal courts of jurisdiction over § 2241 petitions that are nearly identical Petitioner's § 2241 petition.

(1992)). "Courts have described an implied requirement to raise issues with an agency as a 'judge-made,' 'prudential,' or 'common law' duty to exhaust," *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 746 (6th Cir. 2019) (citations omitted), and such a court-made exhaustion rule must comply with statutory schemes and Congressional intent, *Shearson*, 725 F.3d at 593–94. Notably, the United States Court of Appeals for the Sixth Circuit has not yet decided "whether courts should impose administrative exhaustion in the context of a noncitizen's habeas petition for unlawful mandatory detention," *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *3 (E.D. Mich. Sept. 9, 2025) (citing *Hernandez Torrealba v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1621, 2025 WL 2444114, at *8 (N.D. Ohio Aug. 25, 2025)), and "[t]he Sixth Circuit has not formally adopted a standard for determining when prudential exhaustion applies." *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379, at *4 (E.D. Mich. Aug. 29, 2025). However, courts within the Sixth Circuit "have applied the three-factor test, set forth in *United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983) (derived from *McGee v. United States*, 402 U.S. 479, 484[ (1971)]; !*McKart v. United States*, 395 U.S. 185, 193–95[ (1969)),]" to determine whether prudential exhaustion should be required. *Id.* Under this three-factor test,

> Courts may require prudential exhaustion when:
>
> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
>
> (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and
>
> (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Id.* (citing *Shweika v. Dep't of Homeland Sec.*, No. 1:06-cv-11781, 2015 WL 6541689, at *12 (E.D. Mich. Oct. 29, 2015)).

Upon consideration of these factors, this Court concludes that prudential exhaustion should not be required in Petitioner's case. First, the central question presented by Petitioner's § 2241 petition is whether 8 U.S.C. § 1225 or 8 U.S.C. § 1226 applies to Petitioner. That determination relies upon a purely legal question of statutory interpretation and does not require the record that would be developed should the Court require Petitioner to exhaust his administrative remedies. Moreover, this Court is not bound by, and is not required to give deference to, any agency interpretation of a statute. *See Loper Bright Enter. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024) (discussing that "courts need not and under the [Administrative Procedure Act (APA)] may not defer to an agency interpretation of the law simply because a statute is ambiguous").

Second, Petitioner's constitutional challenge to his detention does not require exhaustion. The Sixth Circuit has noted that due process challenges, such as the one raised by Petitioner, which are not premised on "correctable procedural errors," generally do not require exhaustion because the BIA cannot review constitutional challenges. *See Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006) (discussing that "an alien's due process challenge generally does not require exhaustion," but noting that an "alien must raise correctable procedural errors," such as a claim "that the BIA denied him due process by relying upon an 'incomplete and inaccurate' transcript to review his case," "to the BIA"). Finally, it is doubtful that BIA review of Petitioner's custody would preclude the need for judicial review. The Court reaches that conclusion based upon the fact that the Government has clearly set forth its belief that § 1225(b)(1)(A) applies to all noncitizens who have resided within the United States prior to their arrest and detention. Notably, the BIA recently proclaimed that any individual who has ever entered the United States unlawfully and was later detained is no longer eligible for bond and is subject to mandatory detention under § 1225(b)(2)(A). *See Matter of Yajure Hurtado*, 29 I&N Dec. 216, 229 (BIA 2025). It is simply

unlikely that any administrative review by the BIA of that denial would lead the Government to change its position, and thereby obviate the need for judicial review of Petitioner's § 2241 petition. Accordingly, for the foregoing reasons, this Court concludes that prudential exhaustion is not required.

Alternatively, even in situations where a court may ordinarily apply prudential exhaustion, the court may still choose to waive exhaustion. *See Lopez-Campos*, 2025 WL 2496379, at *4 (citations omitted). A court may choose to rule upon the merits of the issues presented when the "legal question is 'fit' for resolution and delay means hardship." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000) (citation omitted). A court may also waive exhaustion if the "pursuit of administrative remedies would be a futile gesture." *Shearson*, 725 F.3d at 594 (citation omitted).

Here, given the Government's position and the BIA's recent decision in *Yajure Hurtado*, requiring Petitioner to exhaust his administrative remedies and request a bond hearing would likely be futile. Moreover, it is clear that delay would result in hardship to Petitioner. First, as noted above, Petitioner would need to request a bond hearing before an immigration judge. There is no evidence in the record as to how long Petitioner would have to wait until such a hearing, if any, were scheduled. Petitioner's request would likely be denied given the BIA's recent decision in *Yajure Hurtado*. Then, Petitioner would have the opportunity to appeal any unfavorable decision to the BIA. Appeals of bond denials "typically take six months or more to be resolved at the BIA." *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1245 (W.D. Wash. 2025) (citation omitted). It is "unmistakable that . . . depriving [Petitioner] of his liberty while awaiting a BIA appeal decision certainly equates to hardship. And any delay results in the very harm [Petitioner] is trying to avoid . . . – detention." *See Lopez-Campos*, 2025 WL 2496379, at *5.

In sum, the Court declines to enforce the doctrine of prudential exhaustion against Petitioner. Moreover, even if the Court were to conclude that exhaustion is warranted, the Court concludes in the alternative that waiver of exhaustion is appropriate. Accordingly, the Court will proceed to address the merits of Petitioner's § 2241 petition.

## V.    Merits Discussion

### A.    Statutory Basis for Petitioner's Detention

Petitioner contends that Respondents have violated the INA by concluding that Petitioner is detained pursuant to the mandatory detention provisions set forth in 8 U.S.C. § 1225(b)(2). (*See* Pet., ECF No. 1, PageID.17.) Respondents, however, contend that Petitioner is properly detained under § 1225 because he is "an alien present without admission and, consequently, an applicant for admission." (Resp. ECF No. 4, PageID.35.)

Section 1225(b)(2)(A) provides that ". . . in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title. 8 U.S.C. § 1225(b)(2)(A). And, § 1226(a) states:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c)[3] and pending such decision, the Attorney General—
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on—
>
>> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or

---

[3] Subsection (c) refers to the "[d]etention of criminal aliens," which does not apply here. *See* 8 U.S.C. § 1226(c). The parties do not contend that Petitioner has been convicted of any crime listed under 8 U.S.C. § 1227(a)(2)(A).

(B) conditional parole . . . .

*Id.* § 1226(a). The plain language of these provisions indicates that both § 1225 and § 1226 govern

the detention of noncitizens pending removal proceedings. The difference is that § 1225 provides

for mandatory detention and § 1226 allows for the release of the noncitizen on conditional parole

or bond. As explained below, the Court concludes that § 1226(a), not § 1225(b)(2)(A), governs

Petitioner's detention.

"A statute should be construed so that effect is given to all its provisions." *Hibbs v. Winn*,

542 U.S. 88, 101 (2004) (citation omitted); *see Corley v. United States*, 556 U.S. 303, 314 (2009);

*see also Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022) (noting that courts "must give effect

to the clear meaning of statutes as written" (citation omitted)). "When interpreting a statute, the

inquiry 'begins with the statutory text, and ends there as well if the text is unambiguous.'" *See In

re Vill. Apothecary, Inc.*, 45 F.4th 940, 947 (6th Cir. 2022) (citation omitted)). But, "the

'meaning—or ambiguity—of certain words or phrases may only become evident when placed in

context.'" *King v. Burwell*, 576 U.S. 473, 486 (2015) (citation omitted). And, "the words of a

statute must be read in their context and with a view to their place in the overall statutory scheme."

*Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012) (citation omitted). The Court must also

"use every tool at [its] disposal to determine the best reading of the statute." *Loper Bright Enter.

v. Raimondo*, 144 S. Ct. 2244, 2266 (2024).

As set forth above, § 1225(b)(2)(A) provides for the detention "of an alien who is *an

applicant for admission*, if the examining immigration officer determines that *an alien seeking

admission* is not clearly and beyond a doubt entitled to be admitted . . . ." 8 U.S.C. § 1225(b)(2)(A)

(emphasis added). The INA defines an "applicant for admission" as "[a]n alien present in the

United States who has not been admitted or who arrives in the United States . . . ." *See id.*

§ 1225(a)(1). The INA further defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *See id.* § 1101(a)(13). The word "entry," is not defined in the INA, s*ee generally id.* § 1101, but the dictionary definition of "entry" is "the right or privilege of entering" or "the act of entering." *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/entry (last visited Nov. 17, 2025). "Entry" has long been understood to mean "a crossing into the territorial limits of the United States." *Hing Sum v. Holder*, 602 F.3d 1092, 1100–01 (9th Cir. 2010) (quoting *Matter of Pierre*, 14 I&N Dec. 467, 468 (BIA 1973)). Further, the phrase "seeking admission" also is undefined in the statute. *See generally id.* Looking to the plain, ordinary meaning of "seeking," this word is defined as "ask[ing] for," *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/seeking (last visited Nov. 17, 2025), and, the word "seeking" "necessarily implies some sort of present-tense action." *Martinez v. Hyde*, 792 F. Supp. 3d 211, 218 (D. Mass. July 24, 2025) (citations omitted).

Respondents contend that any noncitizen who has not been lawfully admitted, regardless of whether they are already present and residing in the United States, is "an alien seeking admission" subject to mandatory detention under § 1225. However, that reading of § 1225 would render the qualifier "seeking admission" in the statute entirely unnecessary. "It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (citations omitted). Given Congress's decision to use different terms in § 1225—i.e., "applicant for admission" and "alien seeking admission"—the Court will presume that Congress intended these phrases to mean different things. *See Pulsifer v.*

*United States*, 144 S. Ct. 718, 735 (2024) ("In a given statute, . . . different terms usually have different meanings." (citation omitted)).

Here, Petitioner is not actively seeking to lawfully cross into the territorial limits of the United States because he already *entered* the United States over two decades ago, in 2004. (*See* Pet., ECF No. 1, PageID.1.). As the United States District Court for the Southern District of New York explained when addressing this issue:

> [S]omeone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as "seeking admission" to the theater. Rather, that person would be described as already present there. Even if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as "seeking admission" (or "seeking" "lawful entry") at that point—one would say that they had entered unlawfully but now seek a lawful means of remaining there. As § 1225(b)(2)(A) applies only to those noncitizens who are actively "seeking admission" to the United States, it cannot, according to its ordinary meaning, apply to [the petitioner], because he has already been residing in the United States for several years.

*Lopez Benitez v. Francis*, No. 25 Civ. 5937 (DEH), 2025 WL 2371588, at *7 (S.D.N.Y. Aug. 13, 2025); *see Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379, at *6 (E.D. Mich. Aug. 29, 2025) ("[S]eeking admission' . . . implies action – something that is currently occurring, and in this instance, would most logically occur at the border upon inspection.").

In comparison to § 1225, "[s]ection 1226(a) is less specific," *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *4 (E.D. Mich. Sept. 9, 2025), and states that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." *See* 8 U.S.C. § 1226(a). Looking at both § 1225 and § 1226, even if the statutory text appears unambiguous when viewed in isolation, "courts are to interpret the words of a statute in context." *Hibbs*, 542 U.S. at 101 (citation omitted); *see Yates v. United States*, 574 U.S. 528, 537 (2015) ("Whether a statutory term is unambiguous, however, does not turn solely on dictionary definitions of its component words. Rather, '[t]he

plainness or ambiguity of statutory language is determined [not only] by reference to the language itself, [but as well by] the specific context in which that language is used, and the broader context of the statute as a whole.'" (alterations in original) (citations omitted)).

Section 1225 is titled, "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." 8 U.S.C. § 1225. A title, such as this "is especially valuable [where] it reinforces what the text's nouns and verbs independently suggest." *Yates*, 574 U.S. at 552 (Alito, J., concurring). Additionally, Congress's decision to include the word "arriving," as well as the decision to include references to methods of physical arrival, such as "stowaways" and "crewmen," in § 1225 evidences an intent to address noncitizens arriving "at a border or port of entry." *Pizarro Reyes*, 2025 WL 2609425, at *5; 8 U.S.C. § 1225(a)(2)(3). In contrast, § 1226 is titled, "Apprehension and detention of aliens." 8 U.S.C. § 1226. "That Congress separated removal of arriving aliens[, as set forth in § 1225,] from its more general section for 'Apprehension and detention of aliens,' [as set forth in] § 1226, implies that Congress enacted § 1225 for a specific, limited purpose." *Pizarro Reyes*, 2025 WL 2609425, at *5 (citing *Dubin v. United States*, 143 S. Ct. 1557, 1567–68 (2023)).

Further, in *Jennings v. Rodriguez*, 583 U.S. 281 (2018), the United States Supreme Court discussed that § 1225 is part of the "process of decision [that] generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." *Jennings*, 583 U.S. at 287. The United States Supreme Court stated that, in contrast, "[s]ection 1226 generally governs the process of arresting and detaining . . . aliens [already living within the United States] pending their removal." *Id.* at 288. Thus, in *Jennings*, the United States Supreme Court differentiated between noncitizens initially arriving to

the United States who are governed by § 1225, and noncitizens already present in the country who are governed by § 1226. *See id.* at 288–89.

Moreover, the Court cannot ignore Congressional intent when conducting statutory analysis. Recently, Congress passed the Laken Riley Act, which amended § 1226 to prescribe a subset of noncitizens who are exempt from the discretionary bond analysis. Specifically, the Act added a subsection that explicitly mandates detention for those noncitizens who are inadmissible under §§ 1182(a)(6)(A), 1182(a)(6)(C), and 1182(a)(7), *and* who have been arrested for, charged with, or convicted of certain crimes. *See* 8 U.S.C. § 1226(c)(1)(E). Quite simply, were the Court to agree with Respondents' interpretation of §§ 1225 and 1226, § 1226(c)(1)(E) would be rendered entirely superfluous.

Accordingly, for the above-discussed reasons, the Court concludes that § 1226(a), not § 1225(b)(2)(A), governs noncitizens, such as Petitioner, who have resided in the United States and were already within the United States when apprehended and arrested.[4]

### B.    Fifth Amendment Due Process Considerations

Petitioner also argues that his detention violates the Fifth Amendment's Due Process Clause. (Pet., ECF No. 1, PageID.15.) Petitioner avers that "there is no question that the

---

[4] The Court has recently reached the same conclusion in a number of other habeas corpus actions filed by immigration detainees. *See, e.g.*, *Salgado Mendoza v. Noem*, No. 1:25-cv-1252, 2025 WL 3077589, at *6 (W.D. Mich. Nov. 4, 2025); *Ruiz Mejia v. Noem*, No. 1:25-cv-1227, 2025 WL 3041827, at *5–6 (W.D. Mich. Oct. 31, 2025); *De Jesus Ramirez v. Noem*, No. 1:25-cv-1261, 2025 WL 3039266, at *5 (W.D. Mich. Oct. 31, 2025); *Escobar-Ruiz v. Raycraft*, No. 1:25-cv-1232, 2025 WL 3039255, at *5 (W.D. Mich. Oct. 31, 2025); *Marin Garcia v. Noem*, No. 1:25-cv-1271, 2025 WL 3017200, at *5 (W.D. Mich. Oct. 29, 2025); *Cervantes Rodriguez v. Noem*, No. 1:25-cv-1196, 2025 WL 3022212, at *6 (W.D. Mich. Oct. 29, 2025); *Puerto-Hernandez v. Lynch*, No. 1:25-cv-1097, 2025 WL 3012033, at *9 (W.D. Mich. Oct. 28, 2025); *Rodriguez Carmona v. Noem*, No. 1:25-cv-1131, 2025 WL 2992222, at *6 (W.D. Mich. Oct. 24, 2025); *Sanchez Alvarez v. Noem*, No. 1:25-cv-1090, 2025 WL 2942648, at *6 (W.D. Mich. Oct. 17, 2025). And, this Court is far from the first federal District Court to reach this conclusion.

government has deprived Petitioner of his liberty by refusing him the opportunity to request a bond

hearing." (*Id.*) Petitioner suggests that "Respondents have not demonstrated that Petitioner needs

to be detained," and that "[b]y issuing its decision in *Matter of Yajure Hurtado*, the BIA has taken

nearly all bond authority away from Immigration Judges." (*Id.*, PageID.16.) Respondents counter

Petitioner's arguments by stating that Petitioner has received due process because:

> Petitioner has received notice of the charges against him, has access to counsel,
> may attend hearings with an immigration judge, can request bond at that time, has
> the right to appeal the denial of any request for bond, and has been detained by ICE
> for a short time

(Resp., ECF No. 4, PageID.53.)

"Freedom from imprisonment—from government custody, detention, or other forms of

physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects."

*Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citation omitted). The Fifth Amendment's Due

Process Clause extends to all persons, regardless of status. *See A. A. R. P. v. Trump*, 145 S. Ct.

1364, 1367 (2025). Thus, noncitizens, such as Petitioner, are entitled to its protections. *See id.*; *see

also Chavez-Acosta v. Garland*, No. 22-3045, 2023 WL 246837, at *3 (6th Cir. Jan. 18. 2023).

Respondents contend that Petitioner is entitled to no further process at this time. (*See* Resp.

ECF No. 4, PageID.53.) Respondents' assertion, however, is contradicted by their own supporting

evidence—there is nothing in the record before the Court to suggest that a bond hearing has been

scheduled. Respondents claim further "that statutory provisions denying bond during

administrative removal proceedings do not violate the [D]ue [P]rocess [C]lause." (*Id.*, PageID.52

(citation omitted).)

Granted, if this Court agreed with Respondents that Petitioner's detention is governed by

§ 1225(b)(2)(A), the Government's due process argument might hold true. However, as set forth

above, this Court does not agree with Respondents that Petitioner's detention is governed by

§ 1225(b)(2)(A). Instead, Petitioner's detention is governed by § 1226(a). Section 1226(a) clearly sets forth a discretionary framework for detention or release of an alien subject to that provision. The statute allows the Attorney General to continue to detain the arrested alien, or release the alien on "bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General," or "conditional parole." *See* 8 U.S.C. § 1226(a)(1)–(2). This discretionary framework "requires a bond hearing to make an individualized custody determination." *See Lopez-Campos*, 2025 WL 2496379, at *9.

The Sixth Circuit has discussed that the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), regarding the adequacy of process, applies in the context of immigration detention. *See, e.g.*, *United States v. Silvestre-Gregorio*, 983 F.3d 848, 852–56 (6th Cir. 2020) ("If this court has previously addressed the due-process claim, then we are bound by precedent; if the claim is an issue of first impression, then we generally apply the three-factor test the Supreme Court set out in *Mathews v. Eldridge*. . . ."). Under *Mathews*, the Court must consider the following three factors: "(1) the private interest that will be affected by official action; (2) the risk of erroneous deprivation of that interest; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures entail." *See Lopez-Campos*, 2025 WL 2496379, at *9 (citing *Mathews*, 424 U.S. at 335).

The first *Mathews* factor clearly weighs in favor of Petitioner. There is no dispute that Petitioner has a significant private interest in avoiding detention, as one of the "most elemental of liberty interests" is to be free from detention. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (citation omitted). The Court may also consider Petitioner's conditions of confinement, i.e., "whether a detainee is held in conditions indistinguishable from criminal incarceration." *See Günaydin v. Trump*, 784 F. Supp. 3d 1175, 1187 (D. Minn. 2025) (citing *Hernandez-Lara v. Lyons*,

10 F.4th 19, 28 (1st Cir. 2021); *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020)). Here, Petitioner, through counsel, represents that his "three US citizen children, his wife, his Lawful Permanent Resident brother, US citizen sister, and other family members live in the United States." (ECF No. 1, PageID.4.) Moreover, Petitioner "is the sole breadwinner for his wife and children." (*Id.*) There can be no doubt that he is "experiencing [many of] the deprivations of incarceration, including loss of contact with friends and family, loss of income earning, . . . lack of privacy, and, most fundamentally, the lack of freedom of movement." *See Günaydin*, 784 F. Supp. 3d at 1187.

Likewise, the second *Mathews* factor weighs in Petitioner's favor. Clearly, there is a high risk of erroneously depriving Petitioner of his freedom should he not receive an individualized bond hearing at which the immigration judge can assess whether Petitioner poses a flight risk and/or a danger to the community.

Finally, under the third *Mathews* factor, the Court recognizes that the Government "does, indeed, have a legitimate interest in ensuring noncitizens' appearance at removal proceedings and preventing harms to the community." *See Sampiao v. Hyde*, No. 1:25-cv-11981-JEK, 2025 WL 2607924, at *12 (D. Mass. Sept. 9, 2025) (citation omitted). However, Respondents have not shown that they have a significant interest in Petitioner's continued detention. Notably, continuing to enforce Petitioner's detention would likely impose more costs upon the Government, as it would be required to continue funding and overseeing Petitioner's detention. *See id.*

In sum, the Court's balancing of the *Mathews* factors weighs in Petitioner's favor. Accordingly, the Court concludes that Petitioner's current detention under the mandatory detention framework set forth in § 1225(b)(2)(A) violates Petitioner's Fifth Amendment due process rights.

## VI.    Proper Respondents

Respondents argue that the Detroit ICE Field Office Director is the only proper Respondent in this action, and they seek the dismissal of all of the other named Respondents. (Resp., ECF No. 4, PageID.54.)

"The writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody." *Braden v. 30th Jud. Cir. Ct. of Ky.*, 410 U.S. 484, 494–95 (1973). Thus,

> [r]ead literally, the language of § 2241(a) requires nothing more than that the court issuing the writ have jurisdiction over the custodian. So long as the custodian can be reached by service of process, the court can issue a writ "within its jurisdiction" requiring that the prisoner be brought before the court for a hearing on his claim, or requiring that he be released outright from custody, even if the prisoner himself is confined outside the court's territorial jurisdiction.

*Id.* at 495.

The Sixth Circuit has concluded "that a detained alien generally must designate his immediate custodian—the [Immigration and Naturalization Service (INS), which was the agency's prior name,] District Director for the district where he is being detained—as the respondent to his habeas corpus petition." *Roman v. Ashcroft*, 340 F.3d 314, 322 (6th Cir. 2003). Here, Petitioner has named the Director of the Detroit Field Office of ICE and the United States Secretary of Homeland Security as Respondents. (Pet., ECF No. 1, PageID.1, 3.)

In *Roman v. Ashcroft*, the Sixth Circuit stated that although it "conclude[d] that the immediate custodian rule generally applies to alien habeas corpus petitioners, . . . [there is] the possibility of exceptions to this rule." *Roman*, 340 F.3d at 322. The *Roman* court explained:

> Some courts are also willing to make an exception to the immediate custodian rule in other extraordinary circumstances. For example, courts have noted the INS's ability, as a practical matter, to deny aliens any meaningful opportunity to seek habeas corpus relief simply by transferring aliens to another district any time they filed a habeas corpus petition. *Chavez–Rivas*[ *v. Olsen*], 194 F. Supp. 2d [368,] 374 [(D.N.J. 2002)]. Aliens remaining in detention for extended periods are often

20

transferred several times during their detention. *See Lee v. Ashcroft*, 216 F. Supp. 2d 51, 55 (E.D.N.Y. 2002) ("[T]he location of custody, and the identity of the day-to-day custodian, frequently change when detainees are transferred among INS facilities, all of which are under the control of the Attorney General."); . . . . In light of these transfers, one court reasoned that an alien may properly name a respondent other than his immediate custodian because a petition naming a higher level official, such as the Attorney General, could be adjudicated without interruption in the event of a transfer. *Arias–Agramonte*[ *v. Comm'r*], [No. 00 CIV. 2412 (RWS),] 2000 WL 1617999, at *8 [(S.D.N.Y. Oct. 30, 2000)] (explaining that a petition naming only one's immediate custodian would be dismissed when the alien was transferred to another local district).

*Id.* at 325–26. Thus, the Sixth Circuit concluded, "an exception might be appropriate if the INS were to exercise its transfer power in a clear effort to evade an alien's habeas petitions." *Id.* at 326.

In light of the foregoing, to ensure that Respondents maintain authority to enforce this Court's conditional grant of habeas relief—i.e., the Court's directive that Petitioner receive a bond hearing or, alternatively, be released—in the event that Petitioner is transferred out of the Western District of Michigan, the Court will not dismiss Secretary Noem as a Respondent to these proceedings.

## <u>Conclusion</u>

For the reasons discussed above, the Court will enter a judgment conditionally granting Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) The Court will order Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within five business days of the date of this Court's opinion and judgment or, in the alternative, immediately release Petitioner from custody. The Court will also order Respondents to file a status report within six business days of the date of this Court's opinion and judgment to certify compliance with this opinion and the corresponding judgment. The status report shall include if and when the bond hearing occurred, if bond was granted or denied, and if bond was denied, the reasons for the denial.

Dated:   November 20, 2025          /s/ Paul L. Maloney
                                     Paul L. Maloney
                                     United States District Judge